**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NICHOLAS AUSTIN HOYLE**<br><br>**Plaintiff,**<br><br>v.<br><br>**PATRICK A. CROZIER, et al.**<br><br>**Defendants.** | **CIVIL ACTION NO. 22-3049** |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                        January 12, 2024

Plaintiff Nicholas Austin Hoyle, a prisoner at the George W. Hill Correctional Facility, filed a Second Amended Complaint ("SAC") raising claims *pro se* against eleven named Defendants under 42 U.S.C. § 1983. The claims arise from a police investigation that led to Hoyle's arrest, prosecution, and conviction by jury for murder and related charges in the Delaware County Court of Common Pleas.[1] Hoyle has not yet been sentenced for the murder conviction. For the reasons stated below, the Court must dismiss Hoyle's claims against all but four of the Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. As to the few surviving Fourth Amendment claims against the remaining Defendants—each of whom are law enforcement officials sued in their individual capacities—the Court will direct service of the SAC for further development of the presently limited record.

---

[1] *Commonwealth v. Hoyle*, CP-23-CR-5081-2021 (C.P. Del. Cnty.).

1

### I. BACKGROUND[2]

#### A. Factual Background

On October 4, 2021 at approximately 9:17 a.m., the dead body of Dwayne Williams was discovered inside a SEPTA trolley stop in Delaware County, Pennsylvania.[3] The medical examiner determined the cause of death as a single gunshot wound to the chest.[4] Corporal Patrick A. Crozier ("Cpl. Crozier") and Detective David Tyler of the Collingdale Police Department subsequently conducted a murder investigation. On October 5, 2021, they reviewed video surveillance of the incident from a neighboring business, Collingdale Florist, which showed the victim interacting with an unidentified person, the victim clutching his chest, and then the victim collapsing at approximately 1:30 a.m. on October 4, 2021.[5] Cpl. Crozier also emailed Kristina Andrews, an employee of Wawa, to obtain video footage from a nearby Wawa food store.[6] Cpl. Crozier obtained and reviewed the footage, which showed an "unidentified person with a similar appearance [to] the person . . . assumed to have been interacting with the decedent prior to him collapsing."[7] The video showed the "unidentified person" purchasing items at Wawa with a card at 12:21 a.m. on October 4, 2021.[8]

---

[2] The following facts are taken from Hoyle's pleadings and publicly available records of which this Court takes judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in determining whether a pleading has stated a claim (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)). The Court adopts the pagination assigned to Hoyle's filings by the CM/ECF docketing system.

[3] SAC [Doc. No. 30] at 11; Aff. of Probable Cause, *Hoyle v. Williams*, No. 22-3673 (E.D. Pa.) [Doc. No. 12] at 3. The Court takes judicial notice of Cpl. Crozier's Affidavit of Probable Cause in the underlying criminal case, which Hoyle submitted as part of his habeas proceedings before Judge Mark A. Kearney, but which has not yet been introduced into the record in this § 1983 action.

[4] *Id.* at 3; *see also* SAC [Doc. No. 30] at 11 (stating that the medical examiner determined the cause of death to be "a single gunshot wound to the right shoulder").

[5] Aff. of Probable Cause, No. 22-3673 [Doc. No. 12] at 3; SAC [Doc. No. 30] at 11.

[6] *Id.*

[7] *Id.* at 11–12.

[8] *Id.* at 12; Aff. of Probable Cause, No. 22-3673 [Doc. No. 12] at 3–4.

Cpl. Crozier contacted Andrews to request the credit card information from the Wawa transaction, and Andrews responded with an email attaching a copy of the receipt from the transaction, which confirmed that the purchase was made with an EBT card.[9] According to Hoyle, the receipt contained only the last four digits of the EBT card, therefore Cpl. Crozier was required to follow up with Andrews to request the entire EBT card number.[10] Hoyle contends that, on October 6, 2021, Andrews relayed the full EBT card number over the phone to Detective Tyler, who then provided it to Cpl. Crozier.[11] Also on October 6, 2021, Cpl. Crozier prepared and issued an affidavit of probable cause requesting a search warrant be issued to the Department of Public Welfare Records ("DPW Records") to ascertain the identity of the person associated with the EBT card.[12] Cpl. Crozier's affidavit stated, in contrast to Hoyle's narrative, that the original receipt he received from Andrews "noted that the EBT card number was 60076030012544397," without any mention of a follow-up call with Andrews.[13]

Later on the morning of October 6, 2021, a warrant issued based on Cpl. Crozier's affidavit and was served on DPW Records.[14] In response, Susan O'Hara, an employee of DPW Records, released documents to the police reflecting that the EBT card number identified in the warrant was associated with Hoyle and provided his home address.[15]

---

[9] SAC [Doc. No. 30] at 12. The federal Supplemental Nutrition Assistance Program ("SNAP") "provides qualifying low-income households funds with Electronic Benefit Transfer ('EBT') cards . . . which are essentially pre-loaded debit cards [that] allow the beneficiaries to purchase eligible food from qualifying retailers." *Three Bros. Supermarket Inc. v. United States*, No. 19-2003, 2022 WL 888814, at *1 (E.D. Pa. Mar. 25, 2022).

[10] SAC [Doc. No. 30] at 12.

[11] *Id.* at 12–13.

[12] *Id.* at 13–14; Aff. of Probable Cause, No. 22-3673 [Doc. No. 12] at 2, 4.

[13] *Id.* at 4.

[14] SAC [Doc. No. 30] at 14.

[15] *Id.* at 14–15.

On the afternoon of October 6, 2021, Cpl. Crozier and Detective Tyler began preparing a criminal complaint based on the information they had received from DPW Records.[16] Meanwhile, Cpl. Crozier contacted Officer James MacIntosh with the Collingdale Police Department and asked that he surveil the address DPW provided.[17] MacIntosh contacted Detective Sean Johnson of the Sharon Hill Police Department to assist with the surveillance while they awaited approval of a search warrant to conduct a search of the residence.[18]

Hoyle contends that he was arrested on October 6, 2021.[19] He recounts the following series of events on October 6: MacIntosh and Johnson were surveilling the property and observed Hoyle, the "person of interest in their investigation," enter the passenger side of a Nissan Altima; the officers executed a "slow roll" past the Altima, confirmed that Hoyle was the passenger of the vehicle, and then "conducted a warrantless vehicle stop"; MacIntosh and Johnson then surrounded the car, held Hoyle and the driver "by gunpoint," and shouted at them to put their hands in the air; MacIntosh stated, "don't try to run I will blow your [expletive] head off!"; Hoyle was "scared for his life . . . and urinated on himself"; both he and the driver of the car surrendered, and, at approximately 4:30 p.m., MacIntosh placed Hoyle under arrest and took him to the Collingdale Police Department, where he was read his *Miranda* warnings.[20]

Consistent with Hoyle's account, MacIntosh testified, upon review of the police incident report, that he arrested Hoyle on Wednesday, October 6, 2021.[21] MacIntosh further stated that during the arrest, he recovered from Hoyle's person a silver revolver and a wallet containing "the

---

[16] *Id.* at 15.

[17] *Id.* at 15–16.

[18] *Id.* at 16.

[19] SAC [Doc. No. 30] at 17.

[20] *Id.* at 16–17.

[21] MacIntosh Test. Tr., No. 22-3673 [Doc. No. 12] at 6.

4

EBT card that was used to obtain his identity."[22] MacIntosh testified that he did not look inside the wallet "at the scene," but "later on" he searched the wallet and discovered the EBT card.[23]

According to Hoyle, Magisterial District Judge Lee Cullen Grimes approved the search warrant for Hoyle's home address at 5:24 p.m. on October 6, 2021, after Hoyle had been arrested and was already in police custody.[24] Hoyle contends that the criminal charges against him were not approved until the next day, October 7, 2021.[25] The Criminal Complaint contains a "Date Filed" of October 6, 2021, but the signature of the Magisterial District Judge approving the complaint is accompanied by a hand-written date of October 7, 2021.[26] The Delaware County Court of Common Pleas docket lists a "Complaint Date" of October 7, 2021 and indicates that Hoyle was charged with murder and related crimes in connection with events that occurred on October 4, 2021.[27]

On November 19, 2021, a preliminary hearing was held in Hoyle's case before Judge Grimes.[28] At the hearing, Detective Tyler and Cpl. Crozier testified about their review of the Wawa surveillance footage, the request to the store clerk for the EBT card number, and the

---

[22] *Id.*

[23] *Id.*

[24] SAC [Doc. No. 30] at 17.

[25] *Id.*

[26] Crim. Compl., No. 22-3673 [Doc. No. 6] at 4. The Court takes judicial notice of the criminal complaint in the underlying criminal case, which Hoyle submitted as part of his habeas proceedings before Judge Kearney.

[27] Docket, *Commonwealth v. Hoyle*, No. CP-23-CR-5081-2021, at 1, 3 (C.P. Del. Cnty.). This Court's October 12, 2022 Memorandum Opinion and Order, which granted Hoyle leave to proceed *in forma pauperis* as to his § 1983 claims, previously stated that "Judge Grimes authorized the [arrest] warrant, and Hoyle was arrested pursuant to the warrant on the same day." *Hoyle v. Crozier*, No 22-3049, 2022 WL 7127649, at *1 (E.D. Pa. Oct. 12, 2022). However, on October 17, 2022—five days after this Court issued its Memorandum Opinion—the warrant was docketed in Hoyle's separate habeas proceedings before Judge Kearney. The warrant has yet to be docketed in the present § 1983 action. Accordingly, based on the text of the warrant (which is now available in the public record), this Court acknowledges that the timing of events concerning Hoyle's arrest relative to the issuing date of the warrant is now in dispute. *See* Crim. Compl., No. 22-3673 [Doc. No. 6] at 4.

[28] *Crozier*, 2022 WL 7127649 at *1–2; Docket, *Commonwealth v. Hoyle*, MJ-32123-CR-141-2021, at 1 (Del. Cnty. Magis. Dist. Ct.).

receipt of Hoyle's address and information from DPW Records.[29] Six of the seven charges were held for court and transferred to the Delaware County Court of Common Pleas.[30]

### B. Procedural Background

On August 1, 2022, while he was awaiting trial for murder and related charges in the Delaware County Court of Common Pleas,[31] Hoyle filed this civil action pursuant to 42 U.S.C. § 1983 against nine officers of the Collingdale Police Department—Cpl. Crozier, Detective Tyler, Thomas Scarpato, Officer MacIntosh, William Gordon, David McDonald, James Reardon, Brian Alexander, and Louis Grandizio—and Magisterial District Judge Grimes.[32] Hoyle asserted claims based on his arrest and prosecution.

On October 12, 2022, this Court issued a Memorandum Opinion and Order granting Hoyle leave to proceed *in forma pauperis* and dismissing his Complaint for failure to state a claim.[33] The dismissal was without prejudice to Hoyle filing an amended complaint as to his false arrest and malicious prosecution claims against the officers, upon a showing that the criminal proceedings resolved in Hoyle's favor.[34]

On October 31, 2022, Hoyle filed an amended complaint against the nine officers raising Fourth Amendment claims.[35] On January 4, 2023, the Court stayed this case pending the resolution of Hoyle's underlying criminal case in Delaware County.[36] Despite the stay, Hoyle

---

[29] *Crozier*, 2022 WL 7127649 at *1.

[30] *Id.* at *2; Docket, *Commonwealth v. Hoyle*, MJ-32123-CR-141-2021, at 2–3 (Del. Cnty. Magis. Dist. Ct.).

[31] *See Commonwealth v. Hoyle*, CP-23-CR-5081-2021 (C.P. Del. Cnty.).

[32] Compl. at 2–3 [Doc. No. 2].

[33] *Crozier*, 2022 WL 7127649 at *4.

[34] *Id.*

[35] Am. Compl. [Doc. No. 7].

[36] Order, Jan. 4, 2023 [Doc. No. 11]; *Commonwealth v. Hoyle*, CP-23-CR-5081-2021 (C.P. Del. Cnty.).

filed numerous requests for status updates and three "Requests for Joinder" seeking to add additional factual allegations, defendants, and claims to his Amended Complaint.[37]

In a letter dated October 1, 2023, Hoyle informed the Court that a jury trial was held in the Delaware Court of Common Pleas, commencing on September 26, 2023, and concluding with a verdict of guilty on the third-degree murder charge on September 28, 2023.[38] Hoyle therefore asked the Court to lift the stay.[39] On November 2, 2023, the Court lifted the stay and directed Hoyle to file a comprehensive second amended complaint raising all of his claims in the same pleading.[40]

On November 20, 2023, Hoyle filed the Second Amended Complaint currently before the Court, which names the following Defendants: (1) Patrick A. Crozier, identified as a Corporal employed by the Collingdale Police Department; (2) David Tyler, identified as a Detective with the Delaware County Criminal Investigation Division ("CID"); (3) James MacIntosh, identified as a Patrolman with the Collingdale Police Department; (4) Sean Johnson, identified as a Detective with the Sharon Hill Police Department; (5) Kristina Andrews, identified as a Wawa employee; (6) Susan O'Hara, identified as an employee of DPW Records; (7) the Collingdale Police Department; (8) the Delaware County CID; (9) the Sharon Hill Police Department; (10) Wawa Corporation; and (11) DPW Records.[41] The individual Defendants are sued in their

---

[37] *See, e.g.*, Doc. Nos. 12, 18, 23.

[38] Pl.'s Letter, Oct. 1, 2023 [Doc. No. 26]. The docket indicates that Hoyle was further found guilty of prohibited possession of a firearm, carrying a firearm without a license, and possession of an instrument of crime with intent to employ it criminally. Docket, *Commonwealth v. Hoyle*, CP-23-CR-5081-2021, at 4 (C.P. Del. Cnty.).

[39] Pl.'s Letter, Oct. 1, 2023 [Doc. No. 26].

[40] Order, Nov. 2, 2023 [Doc. No. 29].

[41] SAC [Doc. No. 30] at 2–6.

7

individual and official capacities, while the entity Defendants are sued on the basis of "Respondeat Superior."[42]

Hoyle is currently in state custody and awaiting his sentencing hearing, which is scheduled for January 29, 2024.[43]

## II.      STANDARD OF REVIEW

Hoyle is proceeding *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6),[44] which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[45] "At this early stage of the litigation, [the Court] accept[s] the facts alleged in [Plaintiff's] *pro se* complaint as true, draw[s] all reasonable inferences in [his] favor, and ask[s] only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim."[46] Conclusory allegations do not suffice.[47] As Hoyle is proceeding *pro se*, the Court construes his allegations liberally.[48]

---

[42] *Id.*

[43] Docket, *Commonwealth v. Hoyle*, No. CP-23-CR-5081-2021, at 2 (C.P. Del. Cnty.).

[44] *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).

[46] *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quotation marks and original modifications omitted).

[47] *Iqbal*, 556 U.S. at 678.

[48] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

### III. DISCUSSION

Hoyle primarily brings his claims pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[49] In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, therefore a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims.[50]

Hoyle asserts many claims against the 11 named defendants, including assorted violations of his constitutional rights under § 1983 and alleged violations of state and federal provisions. He seeks monetary damages.[51] First, Hoyle alleges that Andrews, the Wawa employee, lacked the authority to disclose the full EBT card number to the police without a warrant "[b]ecause the entire EBT card number is protected under Federal regulation," and that the disclosure of the EBT card number was a violation of various state and federal provisions governing the disclosure of information about EBT card holders, as well as the Pennsylvania Constitution.[52]

Second, Hoyle alleges that "the proceeding was initiated without probable cause," because Cpl. Crozier and Detective Tyler failed to obtain a search warrant supported by probable

---

[49] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

[50] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (emphasis in original) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 677)).

[51] SAC [Doc. No. 30] at 10.

[52] *Id.* at 4, 12–13 (citing 7 C.F.R. § 274.8(a)(1)(ix); 62 Pa. Cons. Stat. § 404).

cause "to seize the full EBT card number from Wawa," and "[i]nformation obtained from an unlawful intrusion cannot itself establish probable cause to support the issuance of a warrant."[53]

Third, Hoyle alleges that Cpl. Crozier made a misleading statement in his affidavit in support of the search warrant to DPW Records, by representing "that the receipt he obtained from Wawa via email contained the full EBT card number," even though "the receipt provided to police by Wawa showed only the last four digits of the assigned card number . . . and not the entire number[.]"[54] In that regard, Hoyle contends that the affidavit of probable cause failed to "specify the manner in which police obtained the entire EBT card number," and "misinformed" the issuing authority as to the source of the card number.[55]

Fourth, Hoyle alleges that O'Hara, the DPW Records employee, violated DPW procedures and regulations, as well as the Pennsylvania Constitution, by disclosing Hoyle's name and home address, in which he claims to have a reasonable expectation of privacy.[56]

Fifth, Hoyle alleges that the criminal charges against him were not approved until October 7, 2021, the day after his arrest on October 6, 2021, making his arrest improper.[57]

Sixth, Hoyle alleges that Cpl. Crozier and Detective Tyler "falsified . . . Hoyle's identity" by stating in the affidavit in support of the arrest warrant that Hoyle was the person they observed in the surveillance footage from the trolley stop—a statement Hoyle contends was

---

[53] *Id.* at 13.

[54] *Id.*

[55] *Id.* at 14.

[56] *Id.* at 14–15 (citing 55 Pa. Code § 105.4(c); Pa. Dep't Pub. Welfare, SNAP Handbook § 503.42).

[57] SAC [Doc. No. 30] at 17.

10

based solely on the officers' unfounded assumption that the person who engaged in the transaction at Wawa was the same person who committed the murder.[58]

Seventh, Hoyle alleges that he was denied a fair trial in his criminal proceeding because his suppression motion was denied and "[e]vidence that was a product of illegal police misconduct was deemed admissible and presented to the jury."[59] As a result, Hoyle claims he was "wrongfully found guilty by a jury due to the perjured information on affidavits and tainted evidence presented to the jury acquired from illegal police misconduct on behalf of the Sharon Hill and Collingdale Police Department[s]."[60]

For the reasons stated below, the Court will dismiss all of Hoyle's claims except certain of his Fourth Amendment claims against the four police officers. The Court will direct that the SAC be served upon the four officers only as to those claims.

### A. Claims Against Andrews and Wawa

A defendant must be acting under color of state law to be subject to liability under § 1983. Whether a defendant is acting under color of state law—*i.e.*, whether the defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."[61] The Court of Appeals for the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and

---

[58] *Id.* at 18; *see also id.* at 19 ("Due to this falsified information stated in the arrest warrant affidavit . . . the arrest warrant affidavit was perjured.").

[59] *Id.* at 20.

[60] *Id.*

[61] *Leshko v. Servis*, 423 F.3d 337, 339, 347 (3d Cir. 2005) (citations and quotation marks omitted).

(3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."[62]

Construing Hoyle's allegations liberally, Hoyle appears to be proceeding on a theory that Andrews and her employer, Wawa—a private citizen and a private corporation—may be held liable under § 1983 because they provided Hoyle's EBT card number to the police upon an officer's request.[63] However, simply providing information to police during the course of a criminal investigation does not transform private individuals or entities into state actors for purposes of § 1983.[64]

Nor is there any basis for a claim against Andrews or Wawa based on alleged violations of 7 C.F.R. § 274.8(a)(1)(ix) or 62 Pa. Cons. Stat. § 404 in connection with Andrews's disclosure to the police of the entire EBT card number used in the transaction at Wawa by the person of interest in their investigation. The federal regulation Hoyle cites sets forth certain requirements with which the state agency implementing the EBT system must comply, including "[e]nsuring the privacy of household data and providing benefit and data security[.]"[65] The Commonwealth statute Hoyle cites gives DPW "the power to make and enforce regulations" for protection of information obtained in the welfare process, including the names of applicants for and recipients

---

[62] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quotation marks and alteration omitted) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)).

[63] *See* SAC [Doc. No. 30] at 10 (seeking to hold Wawa and Andrews liable for "releasing [Hoyle's] personal information such as an EBT card number to law enforcement" without a warrant or his consent).

[64] *See, e.g.*, *Baack v. Rodgers*, No. 14-875, 2014 WL 4632380, at *1, *3 (E.D. Pa. Sept. 17, 2014) (rejecting § 1983 false arrest claim against a hospital and two of its employees who filed a police report regarding plaintiff's conduct because "reporting suspicious conduct to the police—or answering police questions about that conduct—without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *Collins v. Christie*, No. 06-4702, 2007 WL 2407105, at *4 n.9 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983." (citation omitted)); *Cooper v. Muldoon*, No. 05-4780, 2006 WL 1117870, at *2 (E.D. Pa. Apr. 26, 2006) ("Merely calling the police, furnishing information to the police, or communicating with a state official does not rise to the level of joint action necessary to transform a private entity into a state actor." (citations omitted)).

[65] 7 C.F.R. § 274.8(a)(1)(ix).

of public assistance.[66] The cited regulation and statute do not say anything about the disclosure of a full EBT card number to law enforcement. More important, nothing in these provisions suggests any basis for a damages remedy against private actors for providing a complete EBT card number to the police. Indeed, the Court has not found any authority for such a proposition. Accordingly, all claims against Andrews and Wawa will be dismissed.

### B. Claims Against DPW Records

Hoyle cannot state a plausible claim against DPW Records. The Eleventh Amendment bars suits against a state in federal court unless the state has waived that immunity.[67] The Commonwealth of Pennsylvania and its agencies, such as DPW and its divisions, have not waived that immunity here.[68] Additionally, the Commonwealth and its agencies are not considered "persons" for purposes of § 1983.[69] Accordingly, Hoyle's claims against DPW Records must be dismissed.[70]

### C. Claims Against O'Hara

Because the Eleventh Amendment precludes Hoyle's claims against DPW Records, it also precludes Hoyle's claims against O'Hara in her official capacity. Claims against state officials in their official capacities for monetary damages are treated as claims against the Commonwealth and are therefore barred.[71]

---

[66] 62 Pa. Cons. Stat. § 404.

[67] *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989).

[68] *See* 42 Pa. Cons. Stat. § 8521(b).

[69] *See Will*, 491 U.S. at 69.

[70] *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254–55 (3d Cir. 2010) ("As the District Court duly noted, Pennsylvania and federal law establish that the DPW is entitled to Eleventh Amendment immunity because it is an administrative agency without existence apart from the Commonwealth." (citations omitted)); *see also Joseph v. Pa. Dep't of Pub. Welfare*, 602 F. App'x 898, 901 (3d Cir. 2015) (per curiam) (agreeing with the district court "that Joseph's claims against DPW are barred by the Eleventh Amendment").

[71] *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Kokinda v. Pa. Dep't of Corr.,* 779 F. App'x 944, 948 (3d Cir. 2019) (per curiam) ("The District Court properly concluded that Kokinda's claimed

Hoyle also alleges claims against O'Hara in her individual capacity. "State officials, sued in their individual capacities, are 'persons' within the meaning of § 1983."[72] The Eleventh Amendment does not protect state officials from being sued in their individual capacities, "even if the actions which are the subject of the suit were part of their official duties[.]"[73] Therefore, the Court will analyze Hoyle's individual-capacity claims against O'Hara on the merits.[74]

Hoyle contends that O'Hara's disclosure of his name to the police violated DPW procedures and the Pennsylvania Constitution.[75] He contends that, under the "express terms" of 55 Pa. Code § 105.4(c) and regulations promulgated by DPW, O'Hara was permitted to disclose a benefits recipient's address, but she was "not permitted to disclose the name of a benefits recipient" and was required to "confirm that police already have the recipient's name."[76] He further asserts that he had a reasonable expectation of privacy in his DPW records.[77]

Because the DPW records were obtained pursuant to a warrant, it is irrelevant whether Hoyle had a reasonable expectation of privacy in them.[78] Further, "there is no recognized privilege for DPW records" in this Circuit that would have justified O'Hara refusing to respond

---

violations of §[] 1983 . . . against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment." (citation omitted)); *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).

[72] *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

[73] *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (citing *Hafer*, 502 U.S. 21).

[74] *See Betts v. New Castle Youth Dev. Ctr.*, No. 07-337, 2009 WL 2913846 (E.D. Pa. Sept. 8, 2009), *aff'd*, 621 F.3d 249 (3d Cir. 2010), *and cert. denied*, 562 U.S. 1272 (2011) (dismissing official-capacity claims against employees of a state agency maintained and overseen by DPW as barred under the Eleventh Amendment but ruling on individual-capacity claims on the merits).

[75] SAC [Doc. No. 30] at 14–15 (citing 55 Pa. Code § 105.4(c); Pa. Const. art. I, § 8).

[76] SAC [Doc. No. 30] at 9, 14–15.

[77] *Id.* at 9.

[78] *United States v. Hartwell*, 436 F.3d 174, 177 (3d Cir. 2006) ("[W]hen people have a reasonable expectation of privacy in their persons or effects, all searches and seizures must be supported by a warrant, unless they fall into one of the exceptions to that requirement." (citing *Minnesota v. Dickerson*, 508 U.S. 366, 372–73 (1993)).

to a facially valid warrant.[79] In any event, Hoyle's claims must be dismissed because an alleged violation of a state regulation, in and of itself, is not actionable under § 1983,[80] and there is no legal basis for damages claims under the Pennsylvania Constitution.[81] In sum, the Court cannot discern any plausible basis for a claim against O'Hara for complying with the warrant.

### D. Claims Against the Collingdale Police Department, Delaware County Criminal Investigation Division, and Sharon Hill Police Department

Hoyle has also failed to state a claim against the Collingdale Police Department, Delaware County CID, and Sharon Hill Police Department. Following the Supreme Court's decision in *Monell*,[82] courts have concluded that a police department, as a sub-unit of the local government, is merely a vehicle through which the municipality fulfills its policing functions.[83] Therefore, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.[84] Even if Hoyle had sued the relevant municipalities, his claims would still fail because he presumably would base any such claims on a theory of respondeat superior, as he has expressly done with respect to the named entity Defendants.[85] The fact that these entities employed individuals who allegedly violated Hoyle's rights is not a proper

---

[79] *United States v. Singleton*, 565 F. App'x 108, 113 (3d Cir. 2014). Although Hoyle contends that the warrant contained errors and falsifications, he does not allege that it was facially invalid.

[80] *See generally McMullen v. Maple Shade Twp.*, 643 F.3d 96, 100 & n.5 (3d Cir. 2011).

[81] *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." (citation omitted)).

[82] 436 U.S. at 694.

[83] *See, e.g.*, *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993).

[84] *Id.*; *Martin v. Red Lion Police Dep't*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (per curiam) (holding that police department, a sub-division of its municipality, was not a proper defendant in an action pursuant to 42 U.S.C. § 1983); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability." (citation omitted)).

[85] SAC [Doc. No. 30] at 5–6.

15

basis upon which to impose liability under § 1983.[86] The Court will therefore dismiss Hoyle's claims against these three entities.

### E. Claims Against Crozier, Tyler, MacIntosh and Johnson

Hoyle's claims against the officers in their official capacity, which are in essence claims against their employing municipalities, fail for the same reasons discussed *supra* section III.D as to the Collingdale Police Department, Delaware County CID, and Sharon Hill Police Department, and are therefore dismissed on the same basis.

Hoyle's individual-capacity claims against Cpl. Crozier, Detective Tyler, Patrolman MacIntosh, and Detective Johnson are primarily predicated on the investigation that led to the stop of the Nissan Altima and his arrest on October 6, 2023.[87] He contends that the police "unlawfully obtained [his] entire EBT card number" without a warrant,[88] that the receipt of his name and address from DPW violated his rights because the affidavit underlying the search warrant contained falsehoods as to how the full EBT card number was obtained,[89] and that the officers lacked a basis to seize the Altima and arrest him on October 6, before an arrest warrant issued on October 7, because the officers assumed without proper basis that he was the same person as the person of interest in their investigation.[90] Hoyle also alleges that he was maliciously prosecuted, denied a fair trial, and "wrongfully found guilty by a jury."[91]

---

[86] *See, e.g.*, *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) ("There is no respondeat superior theory of municipal liability, so a city may not be held vicariously liable under § 1983 for the actions of its agents.").

[87] SAC [Doc. No. 30] at 7.

[88] *Id.* at 9, 13.

[89] *Id.* at 13–14.

[90] *Id.* at 17–18.

[91] *See id.* at 20.

These claims are best construed as Fourth Amendment claims.[92] Notably, under the Supreme Court's decision in *Heck v. Humphrey*, "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]"[93] To the extent that Hoyle is raising claims based on allegations that he was maliciously prosecuted, denied a fair trial, or wrongfully convicted, such claims must be dismissed without prejudice because success on those claims would necessarily imply the invalidity of Hoyle's currently intact conviction.[94]

The Supreme Court and the Court of Appeals for the Third Circuit have each indicated that the categorical bar in *Heck* appears to leave at least some daylight for Fourth Amendment claims when the allegedly violative conduct precedes the issuance of legal process.[95]

---

[92] *See Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *Albright v. Oliver*, 510 U.S. 266, 273–74 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment[] . . . must be the guide for analyzing these claims'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018) ("The 'basic purpose of [the Fourth] Amendment,' . . . 'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.'" (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967))).

[93] *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (citing 28 U.S.C. § 2254).

[94] *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (holding that dismissals of claims barred by *Heck* must be without prejudice to reassertion in the event the litigant's conviction and/or sentence are invalidated).

[95] *See Montgomery v. De Simone*, 159 F.3d 120, 126 n.5 (3d Cir. 1998) (explaining that "[plaintiff's] claims for false arrest and false imprisonment are not the type of claims contemplated by the Court in *Heck* which necessarily implicate the validity of a conviction or sentence" (citation omitted)); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2159 n.8 (2019) (indicating that *Heck* left room for "at least some Fourth Amendment unlawful-search claims to proceed without a favorable termination"); *Patrick v. Kingston Police Dep't*, No. 23-1348, 2023 WL 5163897, at *2 & n.3 (3d Cir. Aug. 11, 2023) (per curiam) (treating Fourth Amendment claims for illegal search and false imprisonment differently than wrongful conviction and malicious prosecution claims under *Heck*).

Accordingly, in accepting Hoyle's factual allegations as true (as is required at this early stage of the case), and without further development of the state court record, this Court cannot hold that *Heck* categorically bars Hoyle's Fourth Amendment claims as to the allegedly unlawful searches and his allegedly false imprisonment before the arrest warrant formally issued.

To be clear, it may well be that these remaining claims are ultimately barred. The Court's present decision is by no means a determination on the merits. Rather, the Court is directing service of the SAC on Defendants Crozier, Tyler, MacIntosh, and Johnson, because—in the absence of further factual development, including in particular the arguments Hoyle raised in his suppression motion and the state trial court's reasoning for rejecting those arguments—the Court cannot hold at this time that Hoyle's liberally construed allegations are subject to a categorical dismissal.[96]

Moreover, although the Court holds that Hoyle may proceed at this time on his Fourth Amendment claims based on conduct that preceded the formal initiation of charges against him on October 7, 2021, "[a] claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."[97] Furthermore, to recover compensatory damages on his illegal search claim, Hoyle "must prove not only that the search was unlawful, but that it caused him actual, compensable injury," which "does *not* encompass the 'injury' of being convicted and imprisoned[.]"[98] Therefore, as a matter of law, Hoyle's potential damages for his false arrest claim are limited to

---

[96] *But see Flood v. Schaefer*, 754 F. App'x 130, 133 (3d Cir. 2018) (per curiam) (concluding that pretrial ruling in criminal case precluded relitigating the same issue in § 1983 action); *see generally Allen v. McCurry*, 449 U.S. 90, 104 (1980) (holding that collateral estoppel applied where plaintiff raised Fourth Amendment claims asserting issues that were litigated at a suppression hearing in his state criminal proceeding).

[97] *Montgomery*, 159 F.3d at 126 (citing *Heck*, 512 U.S. at 484; W. Page Keeton et al., *Prosser and Keeton on Law of Torts* § 119, at 888 (5th ed. 1984)).

[98] *Heck*, 512 U.S. at 487 n.7.

any injury he sustained between his arrest on October 6, 2021 and the formal issuance of the criminal complaint and arrest warrant on October 7, 2021, and his potential damages for his illegal search claim are limited to any actual injury he sustained from the allegedly unlawful searches and seizures from October 5, 2021 to October 7, 2021, but not any alleged harm he sustained as a result of his subsequent prosecution, conviction, or imprisonment.

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss the entirety of Hoyle's SAC for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with the narrow exception of his Fourth Amendment claims against Crozier, Tyler, MacIntosh, and Johnson, arising only from the limited period of October 5 to October 7, 2021. The Court cannot hold, based on the limited factual record before it, that those few surviving claims (as pleaded) are subject to dismissal at this time. Accordingly, the Court will direct service of the SAC on the four remaining Defendants so they may respond to those Fourth Amendment claims. The Court concludes that further attempts at amendment would be futile.[99] An order follows.

---

[99] *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").